UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GAIL A. GRACE, | § | |
| | § | |
|   Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:13-CV-4563-B |
| | § | |
| EVERHOME MORTGAGE COMPANY, FEDERAL NATIONAL MORTGAGE ASSOCIATION, and HUGHES WATTERS ASKANASE LLP, | § § § § § | |
| | § | |
|   Defendants. | § | |

MEMORANDUM OPINION AND ORDER

Before the Court is Defendants EverBank, successor by merger to Everhome Mortgage Company,[1] and Federal National Mortgage Association's Motion for Summary Judgment (doc. 30), filed March 20, 2015. For the reasons that follow, the Court concludes that the motion should be, and hereby is, **GRANTED in part** and **DENIED in part**.

I.

BACKGROUND

A. *Factual Background*

This is a dispute over real property located at 3208 Cole Avenue, Unit 2305, Dallas, Texas 75204 (the "Property"). On January 22, 2003, Plaintiff executed a note payable to First Horizon Home Loan Corporation in the principal amount of $156,800.00 (the "Note"). Doc. 31, Defs.' App.

---

[1] Effective July 1, 2011, Defendant EverHome Mortgage Company merged into EverBank, a federal savings association.

33–35 (Ex. B – Declaration of Bradley R. Lee ¶ 3), 36–39 (Ex. B-1 – Fixed/Adjustable Rate Note). To secure payment of the Note, plaintiff executed a deed of trust encumbering the Property (the "Deed of Trust"). *Id.* at 33–35 (Lee Decl. ¶ 4), 40–57 (Ex. B-2 – Deed of Trust). The Deed of Trust was subsequently assigned to EverBank. *Id.* at 67–70 (Ex. C – Assignment of Deed of Trust).

On June 2, 2009, EverBank foreclosed on the Property. Defs.' App. 105–07 (Ex. I – Rescission of June 2, 2009 Foreclosure Sale). Plaintiff filed a suit challenging the propriety of the foreclosure sale in July 2009 (the "first lawsuit"). Doc. 1-2, Orig. Pet. ¶ 11.

The parties agreed to settle the first lawsuit at a September 7, 2009 mediation and entered into a Rule 11 and Settlement Agreement (the "Settlement Agreement"). Defs.' App. 71–74 (Ex. D – Rule 11 and Settlement Agreement); Doc. 42, Pl.'s App. 29–31 (Ex. 1B – Rule 11 and Settlement Agreement). The material terms of the Settlement Agreement required EverBank to (1) pay Plaintiff $5,000.00, (2) rescind the June 2, 2009 foreclosure sale, and (3) modify the payment terms of Plaintiff's existing loan to reflect a new unpaid principal balance of $160,896, a fixed interest rate of 5.125%, and a maturity date of February 1, 2033, with a first payment due November 1, 2010. Defs.' App. 74; Pl.'s App. 31.The Settlement Agreement also included a provision requiring the parties to mediate any disputes related to the interpretation and/or performance of the Settlement Agreement. In full, that provision reads:

> If one or more disputes arise with regard to the interpretation and/or performance of this agreement or any of its provisions, the parties agree to attempt to resolve same by phone conference with the Mediator who facilitated the settlement. If the parties cannot resolve their differences by phone conference, then each agrees to schedule a one-half day of mediation with the mediator within thirty (30) days to resolve the disputes and to share the costs of same equally. If a party refuses to mediate, that party may not recover the attorneys fees or costs in litigation brought to construe or enforce this agreement. Otherwise, if mediation is unsuccessful, then the prevailing party or parties shall be entitled to recover reasonable attorneys fees and expenses,

including the costs of the unsuccessful mediation.

Defs.' App. 73 (Settlement Agmt. ¶ 7); Pl.'s App. 30 (Settlement Agmt. ¶ 7). In accordance with the requirements of the Settlement Agreement, EverBank paid Plaintiff $5,000, rescinded the foreclosure sale, and the parties executed a loan modification agreement that reflected the terms outlined in the Settlement Agreement. Defs.' App. 58–59 (Ex. B-3 – Check dated Feb. 23, 2011), 104–07 (Ex. I – Rescission of Foreclosure Sale), 78–82 (Ex. F – Loan Modification Agreement).

Following EverBank's implementation of the loan modification, Plaintiff's counsel and counsel for EverBank, Hughes Watters Askanase, LLP ("HWA"), began communicating regarding the EverBank's inclusion of lender-placed insurance on Plaintiff's escrow account and the concomitant increase in Plaintiff's monthly escrow payment under the loan. Defs.' App. 20–32 (Ex. A – Plaintiff's Original Petition); Pl.'s App. 1–4 (Ex. 1 – Affidavit of J.B. Peacock, Jr.), 37–86 (Ex. 1E – Email Correspondence). Under the Deed of Trust, Plaintiff had an obligation to maintain insurance covering the Property and to provide proof of the same to EverBank. Defs.' App. 44–45 (Ex. B-2 – Deed of Trust ¶ 5). If Plaintiff failed to do so, EverBank had the right to obtain its own insurance policy to cover the Property and to charge the cost of such insurance to Plaintiff. *Id.* HWA invited Plaintiff to provide proof of insurance for the years 2010–2011 and 2011–2012. Pl.'s App. 74.

On April 11, 2012, Plaintiff provided EverBank what she claimed was proof of insurance coverage dating back to 2009. *Id.* at 37. These policies, however, only insured Plaintiff's personal property and against liability; they did not insure the Property. *Id.* at 38–57. HWA advised Plaintiff's counsel of this deficiency and again requested proof of insurance covering the Property on April 24, 2012. *Id.* at 80. On July 30, 2012, Plaintiff's counsel sent HWA proof of an insurance policy covering the Property that was acquired on May 12, 2012, but did not provide proof of insurance covering the

prior years. *Id.* at 82–83.

EverBank's counsel subsequently represented to Plaintiff's counsel that EverBank was in the process of cancelling the force-placed insurance and issuing a refund to the escrow. *Id.* at 84. However, on November 26, 2012, EverBank's counsel emailed again to inform Plaintiff's counsel that proof of coverage for the years 2010 and 2011 were needed before EverBank could issue a refund to the escrow account. Def.'s App. 21. Plaintiff never provided EverBank with these policies.[2]

On March 12, 2013, EverBank notified Plaintiff that her loan was in default. The notice was delivered to Plaintiff via certified mail, but she did not claim the letter. Defs.' App. 33–35 (Ex. B – Declaration of Bradley R. Lee ¶ 5), 60–66 (Ex. B-4 – Notice of Default). On July 11, 2013, HWA sent Plaintiff a notice pursuant to the federal Fair Debt Collection Practices Act via first class U.S. mail which also advised Plaintiff, among other things, that her loan was in default. *Id.* at 83–85 (Ex. G – Declaration of Dominique M. Varner ¶ 3), 86–89 (Ex. G-1 – FDCPA Foreclosure Notice). On July 15, 2013, HWA notified Plaintiff by U.S. first class mail and certified mail that EverBank had accelerated the maturity of the debt and the Property would be sold at foreclosure sale on August 6, 2013. *Id.* at 83–85 (Varner Decl. ¶ 4), 90–94 (Ex. G-2 – Notice of Acceleration dated July 15, 2013). No sale occurred on August 6, 2013, and, on August 7, 2013, HWA again notified Plaintiff that the maturity of the debt had been accelerated and the Property would be sold at a foreclosure sale on September 3, 2013. *Id.* at 83–85 (Varner Decl. ¶ 5), 95–99 (Ex. G-3 – Notice of Acceleration dated Aug. 7, 2013).

---

[2] Plaintiff's counsel claims that proof of coverage for the years 2010 and 2011 was already provided to EverBank on April 11, 2012. But the policies that Plaintiff provided to EverBank on April 11, 2012 only insured Plaintiff's personal property and against liability. Pl.'s App. 2 (Ex. 1 – Peacock Aff.), 37–57.

EverBank foreclosed on the Property on September 3, 2013. Pl.'s App. 87–91 (Ex. 1F – Substitute Trustee's Deed). Prior to the foreclosure sale, the Property was sold at another foreclosure sale conducted by Plaintiff's homeowner's association, the Bois Du Chene Homeowners Association (the "HOA"). Defs.' App. 100–03 (Ex. I – Foreclosure Deed dated Sept. 3, 2013). Thus, at the time of EverBank's foreclosure, the HOA owned the Property.

B.  *Procedural Background*

On October 28, 2013, Plaintiff commenced the instant action in the County Court at Law No. 2, Dallas County, Texas, asserting claims for breach of the Settlement Agreement, quiet title, and trespass to try title and seeking, among other things, an order declaring EverBank's foreclosure as wrongful, quieting title in the Property in favor of Plaintiff and awarding her possession, and requiring Defendants to comply with the Settlement Agreement.[3] *See generally* Orig. Pet. Defendants removed the case to federal court on November 14, 2013 and now move for summary judgment.

## II.

## LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The substantive law governing a matter determines which facts are material to a case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The summary judgment movant bears the burden of proving that no genuine issue of

---

[3] The County Court at Law issued a temporary restraining order halting Defendants' eviction of Plaintiff and subsequently transferred the case to the 193rd District Court, Dallas County, Texas. Doc. 1-5, Order of Transfer.

material fact exists. *Latimer v. Smithkline & French Labs*, 919 F.2d 301, 303 (5th Cir. 1990). However, if the non-movant ultimately bears the burden of proof at trial, the summary judgment movant may satisfy its burden by pointing to the mere absence of evidence supporting the non-movant's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

Once the summary judgment movant has met this burden, the non-movant must "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (per curiam) (citing *Celotex*, 477 U.S. at 325). In determining whether a genuine issue exists for trial, the court will view all of the evidence in the light most favorable to the non-movant. *Munoz v. Orr*, 200 F.3d 291, 302 (5th Cir. 2000). But the non-movant must produce more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). If the non-movant is unable to make such a showing, the court must grant summary judgment. *Little*, 37 F.3d at 1076.

## III.

## ANALYSIS

Defendants move for summary judgment on Plaintiff's breach of contract claim, suit to quiet title and action in trespass to try title, request for declaratory relief, and request for injunctive relief.[4] The Court addresses Defendants' arguments for why they are entitled to summary judgment on each of these claims and requests for relief, in turn, below.

A. *Plaintiff's Breach of Contract Claim*

Defendants first move for summary judgment on Plaintiff's breach of contract claim. To state

---

[4] Defendants also move for summary judgment on Plaintiff's wrongful foreclosure claim, but Plaintiff has clarified that she is not asserting such a claim. Doc. 40, Pl.'s Resp. Br. 11.

a claim for breach of contract, Plaintiff must plead "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007) (internal quotations and citations omitted).

Plaintiff claims that Defendants breached the terms of the Settlement Agreement by foreclosing on the Property without first attempting to resolve the issue of the force-placed insurance with the mediator. Orig. Pet. ¶¶ 16–18. According to Defendants, however, neither the Settlement Agreement nor the loan modification requires EverBank to notify the mediator or Plaintiff's counsel in the event she defaulted under the modified loan. Doc. 31, Defs.' Br. 6. Thus, Defendants contend they are entitled to summary judgment on Plaintiff's breach of contract claim. *Id.* The Court agrees with Defendants.

According to the plain language of the Settlement Agreement, the agreement to mediate applied only "[i]f one or more disputes arise with regard to the interpretation and/or performance of <u>this</u> agreement or any its provisions." Defs.' App. 73 (Ex. D – Settlement Agreement ¶ 7) (emphasis added). The material terms of the settlement required EverBank to (1) pay Plaintiff $5,000.00, (2) rescind the June 2, 2009 foreclosure sale, and (3) modify the payment terms of Plaintiff's loan. Defs.' App. 74 (Ex. D – Settlement Agreement). Plaintiff does not contest that EverBank complied with these obligations.

The only "dispute" identified by Plaintiff in support of her claim is an alleged dispute regarding the forced inclusion of property insurance on Plaintiff's escrow account and the concomitant increase in Plaintiff's escrow payment that arose after the loan was modified and all of the other terms of the Settlement Agreement had been performed. But whether Plaintiff had

sufficient insurance coverage or provided proof of same to EverBank is completely irrelevant to the Settlement Agreement. Rather, to the extent there was a dispute over force-placed insurance between Plaintiff and EverBank, such a dispute must have arisen under the Deed of Trust, because there is no provision of the Settlement Agreement requiring Plaintiff to maintain sufficient insurance coverage or provide proof of the same. *See generally* Defs. App. 71–74 (Ex. D – Rule 11 and Settlement Agreement); *see also id.* at 44–45 (Ex. B-2 – Deed of Trust ¶ 5). Or, stated differently, there is no provision of the Settlement Agreement that EverBank could have sought to interpret or enforce if Plaintiff failed to maintain sufficient insurance coverage or provide proof of same to EverBank. As such, EverBank was not required to mediate the dispute over the force-placed insurance and Plaintiff's claim fails as a matter of law.[5]

B.   *Plaintiff's Suit to Quiet Title or Action in Trespass to Try Title*

Defendants next move for summary judgment on Plaintiff's suit to quiet title and action in trespass to try title. A suit to quiet title is not the same as an action in trespass to try title. "A suit in trespass to try title is statutory and accords a legal remedy, while a suit to remove cloud or to quiet title accords an equitable remedy." *Katz v. Rodriguez*, 563 S.W.2d 627, 629 (1977) (citing *Standard Oil Co. v. Mashall*, 265 F.2d 46 (5th Cir. 1959)). "To prevail in a trespass-to-try-title action, a plaintiff must usually (1) prove a regular chain of conveyances from the sovereign, (2) establish superior title out of a common source, (3) prove title by limitations, or (4) prove title by prior

---

[5] Even if the "dispute" between EverBank and Plaintiff could be characterized as one involving the enforcement of the loan modification agreement, as Plaintiff appears to argue in her response, Plaintiff's claim still fails. While the Settlement Agreement requires the parties to enter into a loan modification agreement and outlines its basic terms, the loan modification agreement is a distinct contract between the parties (not a provision of the Settlement Agreement) and a dispute over its enforcement is not subject to the mediation provision in the Settlement Agreement.

possession coupled with proof that possession was not abandoned." *Martin v. Amerman*, 133 S.W.3d 262, 265 (Tex. 2004). In addition, the plaintiff must also show that the defendant "unlawfully entered upon and dispossessed him of such premises . . . and withholds from him the possession thereof."[6] *Serna v. U.S. Bank, N.A.*, No. CIV.A. H-13-2559, 2014 WL 108732, at *2 (S.D. Tex. Jan. 9, 2014) (internal quotations and citations omitted).

"The elements of the claim for relief to quiet title are (1) an interest in a specific property, (2) title to the property is affected by a claim by the defendant, and (3) the claim, although facially valid, is invalid or unenforecable." *Bell v. Bank of Am. Home Loan Servicing LP*, No. 4:11-CV-2085, 2012 WL 568755, at *7 (S.D. Tex. Feb. 21, 2012) (citing *U.S. Nat'l Bank Ass'n v. Johnson*, No. 01-10-837-CV, 2011 WL 6938507, at *3 (Tex. App.—Houston [1st Dist.] Dec. 30, 2011, no pet.) (mem.op.)). "A plaintiff in a suit to quiet title must prove and recover on the strength of his own title, not the weakness of his adversary's title." *Fricks v. Hancock*, 45 S.W.3d 322, 327 (Tex. App.—Corpus Christi 2001, no pet.). Unlike in a trespass to try title action, however, plaintiffs need not "trace [....] title to either the sovereign or to a common source." *See Katz*, 563 S.W.2d at 629–30.

Defendants move for summary judgment on Plaintiff's suit to quiet title and action in trespass to try title on the grounds that Plaintiff cannot show superior title to the property. Defs.' Br. 7. According to Defendants, even if Plaintiff could show that EverBank did not have the right to foreclose on the property, the HOA would have superior title as a result of the foreclosure of the HOA's assessment lien. *Id.* In response, Plaintiff maintains that she preserved her right to redeem the property from the HOA should she prevail in this action against EverBank by filing an affidavit

---

[6] The Court struggles to see how Plaintiff can maintain an action in trespass to try title given that she was never physically dispossessed of the Property by Defendants.

with the clerk. Pl.'s Resp. Br. 9 She also observes that should she prevail in this suit, the title would revert back to her because Defendants paid all of the HOA assessment fees. *Id.* at 10.

Plaintiff's response raises the question whether EverBank exercised its right to redeem the Property from the HOA by paying the outstanding assessment fees, in which case Plaintiff would have superior title to the Property should she succeed in proving a defect in EverBank's title.[7] Unfortunately, the Court has no way of confirming that Everbank, in fact, paid the assessment fees or took the other steps necessary to exercise its statutory right to redeem the Property from the HOA, because Plaintiff has not submitted any evidence of such payment and Defendants have not offered a response confirming or denying Plaintiff's contention. While technically Plaintiff's burden to come forward with evidence to raise an issue of material fact, the Court is reluctant to grant EverBank summary judgment on such a technicality, especially given Defendants' lack of response.[8] For these reasons, the Court denies EverBank's motion for summary judgment as it pertains to Plaintiff's suit to quiet title and action in trespass to try title without prejudice to refile.

---

[7] Pursuant to Section 82.113(g) of the Texas Property Code, "[t]he owner of a unit purchased at a foreclosure sale of a [homeowners'] association's lien for assessments may redeem the unit not later than the 90th day after the date of the foreclosure sale." Tex. Prop. Code § 82.113(g). To exercise his or her right to redemption when the association is the purchaser, the owner must:
> pay to the association to redeem the unit all amounts due the association at the time of the foreclosure sale, interest from the date of foreclosure sale to the date of redemption at the rate provided by the declaration for delinquent assessments, reasonable attorney's fees and costs incurred by the association in foreclosing the lien, any assessment levied against the unit by the association after the foreclosure sale, and any reasonable cost incurred by the association as owner of the unit, including costs of maintenance and leasing.

*Id.*

[8] Indeed, the Court notes that to the extent Defendants were aware that EverBank exercised its right to redeem the Property from the HOA when they filed their Motion for Summary Judgment, but represented to the Court that the HOA was the title holder of the Property, Defendants may be subject to sanctions under Rule 11 of the Federal Rules of Civil Procedure.

C.   *Plaintiff's Request for a Declaratory Judgment*

Defendants further urge the Court to grant their request for summary judgment on Plaintiff's request for a judgment declaring EverBank's acceleration of the debt and foreclosure of the Property as wrongful. Defendants contend that "[a] declaratory judgment is not an appropriate remedy for the relief sought." Defs.' Br. 9. The Court agrees.

An action for declaratory judgment is remedial in nature; "its purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and legal relations." Tex. Civ. Prac. & Rem. Code § 37.002. Under Texas law, a declaratory judgment is only appropriate if "(1) a justiciable controversy exists as to the rights and status of the parties; and (2) the controversy will be resolved by the declaration sought." *Park Cities Ltd. P'ship v. Transpo Funding Corp.*, 131 S.W.3d 654, 661 (Tex. App.—Dallas 2004, pet. denied) (citing *Tex. Dep't of Pub. Safety v. Moore*, 985 S.W.2d 149, 153 (Tex. App.—Austin 1998, no pet.). "A declaratory judgment action is not appropriate where plaintiff's cause of action is mature and enforceable in a pending suit that involves the same parties and the same issues as alleged in the declaratory judgment action." *Tucker v. Graham*, 878 S.W.2d 681, 683 (Tex. App.—Eastland 1994, no writ) (citing *Southern Traffic Bureau v. Thompson*, 232 S.W.2d 742 (Tex. Civ. App.—San Antonio 1950, writ ref'd n.r.e.); *see also SpawGlass Const. Corp. v. City of Houston*, 974 S.W.2d 876, 878 (Tex. App.—Houston [14th Dist.] 1998) (holding that a court may deny a request for declaratory relief "where judgment would not remove the uncertainty giving rise to the proceedings."). A declaratory judgment is not appropriate in this case because the allegedly wrongful foreclosure has already occurred and a declaratory judgment would not provide Plaintiff any relief that she could not obtain in an action for damages.

D.     *Plaintiff's Request for Injunctive Relief*

Finally, Defendants argue that they are entitled to summary judgment on Plaintiff's request for injunctive relief because Plaintiff lacks any valid causes of action on which to base such relief. Defs.' Br. 10. Under Texas law, a request for injunctive relief "is not in and of itself a cause of action, but instead necessarily depends on an underlying cause of action." *Wildy v. Wells Fargo Bank, NA*, 3:12-CV-01831-BF, 2013 WL 246860, at *6 (N.D. Tex. Jan. 21, 2013); *Cooks v. Wells Fargo Bank, N.A.*, No. 3:10-CV-0592-D, 2010 WL 2772445, at *4 (N.D. Tex. July 12, 2010); *Brown v. Ke–Ping Xie,* 260 S.W.3d 118, 122 (Tex. App.—Houston [1st Dist.] 2008, no pet.); *Butanaru v. Ford Motor Co.,* 84 S.W.3d 198, 210 (Tex. 2002).

Plaintiff seeks an injunction prohibiting Defendants from evicting Plaintiff from the Property or from selling or attempting to sell the Property. Orig. Pet. 8. But Plaintiff has not asserted a cause of action that would entitle her to such relief. As discussed above, Plaintiff's claim for breach of contract fails as a matter of law because the Settlement Agreement did not require EverBank to mediate before foreclosing. And, to the extent Plaintiff is able to prevail on her suit to quiet title, Plaintiff is entitled to an order quieting her title to the Property, not an injunction prohibiting Defendants from evicting her or selling the Property. *Montenegro v. Ocwen Loan Servicing, LLC*, 419 S.W.3d 561, 567 (Tex. App.—Amarillo 2013), *reh'g overruled* (Jan. 10, 2014), *review denied* (Apr. 25, 2014) (observing that the "holder of feeblest equity" may use a quiet title action to "remove from his way to legal title any unlawful hinderance having the appearance of better right.") (internal quotations and citations omitted). Accordingly, Defendants are entitled to summary judgment on Plaintiff's request for injunctive relief.

IV.

CONCLUSION

For the aforementioned reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment (doc. 30) as it relates to Plaintiff's breach of contract claim, declaratory judgment action, and request for injunctive relief, but **DENIES** the Motion **without prejudice to refile** as it pertains to Plaintiff's suit to quiet title and action in trespass to try title. Should Defendants choose to refile their Motion, they must do so within **twenty-one (21) days** from the date of this order.

**SO ORDERED.**

**SIGNED: September 2, 2015**.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE